# CIRCUIT COURT OF BALTIMORE CITY.

Filed October 24, 1895.

JOSEPH M. CUSHING

VS.

MARTIN CURLANDER.

*John M. Carter* for plaintiff.

*Moses R. Walter* for defendant.

WRIGHT, J.—

COURT: Gentlemen, I examined the authorities last night and did not get through until quite late in the examination of all the cases that I thought I ought to examine, and, therefore, have a little hastily laid down the views which I think should control in this case. The first question I have taken up has been as to what is the effect of the mutuality of the remedy being lost by the changed position of the parties.

The mutuality of a contract which is a requisite to a decree for specific performance is generally stated to be a mutuality which exists at the time of its execution, and specific performances of contracts have been decreed in cases where that mutuality has been destroyed subsequently to the execution of the contract, but an examination of authority on this point has led me to the conclusion that this has been the ruling where the mutuality has been lost by the laches or delay of the party against whom it is sought to have the contract enforced, or by some action on his part leading to that result. In Fry on Specific Performance (3 Amer. Ed. p. 216), the author says, "The mutuality of a contract is, as we have seen, to be judged of at the time it is entered into; so that it is no objection to the plaintiff's right that the defendant may, by delay or other conduct on his part subsequent to the contract have lost his right against the plaintiff." The mutuality demanded by the Courts must, among other things, be a mutuality of remedy. Now in the pending case we have a condition existing in which the mutuality of remedy is destroyed, not through any laches or conduct of the defendant, but by action taken by the other parties to the contract. At the time of its execution there was that mutuality as between the original parties to the contract, but now owing to the dissolution of the firm, which was one of the contracting parties, and the withdrawal of one of the parties from that firm, it is conceded that as against said withdrawing partner, the defendant would

be without remedy should the remaining partner violate the provisions of the agreement.

In other words it is attempted to hold the defendant to a contract, where one of the other contracting parties is relieved of all responsibility in case of a violation of the same as against the rights or interests of the defendant. He made the contract with two and had a right to the security afforded by the responsibility of both, but the rights and liabilities of the original parties having been changed without any act on the part of the defendant producing this effect, it seems to me that it would be inequitable to compel him to perform it.

As there is nothing in the contract recognizing the rights of assignee, I do not think that under the circumstances of this case that a provision should be read into it. The mutuality having been destroyed by the act of the other parties, so far as remedy against the two several individuals is concerned, it is not now in such a condition that a Court of equity should enforce it, even if there were no other grounds to prevent such enforcement.

But is this contract one that a Court of equity should specifically enforce? It is hardly necessary at this day to cite authority to show that although contracts in general restraint of trade may still be illegal and unenforced, on the other hand, contracts in partial restraint of trade are upheld if founded on a valid consideration and not against the public welfare. "Public welfare," says Chief Justice Fuller in Gibbs vs. Consolidated Gas Co., 130 U. S. 399, "is *first* considered, and if it be not involved and the restraint upon one party is not greater than the protection of the other party requires, the contract may be sustained."

In Nestor vs. Brewing Co., 161 Pa. St. 480, the test applied seems to be not whether the article in which it is proposed to stifle competition, is or is not an article of prime necessity, but whether it is of very frequent use among a large number of persons in a given locality. Or, as therein suggested, when commenting on the decision in Coal Co. vs. Coal Co., 68 Pa. 173. "The whole cause of discussion there shows that *injury* to the public was regarded as the true test of illegality." And see to some effect Judge Pryor's opinion in DeWitt Wire Cloth

Co., 14 N. Y., supplement, p. 279. See also More vs. Bennett, 140 Ill. 39, where the Court held that an agreement between stenographers to control the prices to be charged for their services, and thus restraining competition, was against public policy, and could not be enforced.

Now, what is the character of the contract sought here to be enforced? To me it appears to be nothing more or less than an agreement to stifle competition in the sale of the Maryland Reports, and to keep up the price, or, in the language of the day, "to create a corner in the Maryland Reports." Should a Court of Equity decree the specific performance of such a contract? The question, it seems to me, should answer itself. It is not at all the character of contract sustained in Fowle vs. Park, 131 United States 88, where there was an absolute sale of a formula for a certain proprietary medicine, with the right to make the medicine and sell it within certain defined territory, but a prohibition to sell in certain other defined territory. Such contracts of sale have been always sustained and are recognized by many of the authorities which are absolutely opposed to the validity of contracts such as are now before the Court. The formula, or the medicine prepared from the formula, was treated by the Court as a "useful discovery," the Court saying "The policy of the law is to encourage useful discoveries by securing their fruits to those who make them." Nor, is the present contract at all analogous to a sale of the good will of a business, with an agreement not to carry on the same business within certain limits. In this case there has been no sale, but a simple agreement or combination to keep up the price of the Maryland Reports. These reports, although neither bread or meat, are articles or "commodities" of prime necessity to a large number of persons in the State of Maryland; it is of the utmost importance to the interests of the people that there should be competent and learned advisers to advise them as to their legal rights and responsibilities; to enhance the price or to stifle competition in them is of course to make it more difficult for members of the bar and others to obtain them and learn what the law is, and I cannot conceive that it would be any more possible that a Court of equity should

sustain an agreement "to corner" the authorized publications of the laws of the State. In either case it would be a combination for the purpose of making it difficult or expensive for the people to learn the law under which they live, and in neither case should it, in my opinion, receive the sanction of a Court of equity.

Now, these two points, Gentlemen, I consider conclusive in regard to this case; there are other points made by the counsel which may or may not have force, and one I suggested myself. I have looked at the question there of liquidated damages. Now I should say from this contract and the language used in relation to this application of the penalty or liquidated damages, that it was the intention that every portion of this contract should be protected by the provision in regard to liquidated damages. Mr. Pomeroy lays it down positively, that where the parties have agreed upon liquidated damages there can be no decree for a specific performance. The difficulty in this case, however, as in all of these cases, is to find out whether, although it may be difficult, liquidated damages does not amount to a penalty; and the difficulties of this case seemed so great to me in examination last night, that it not being necessary, in my opinion, to decide on that point, I did not go further into it; but in order to see the difficulty, if counsel will examine the case of Taylor vs. Standford, 7 Wheat. 13, and Hough against Kugler, 37 Md. 186, they can discover for themselves how apt are Courts to allow the hardships of a case to control their judgment against principles of law.

I would only say further in relation to the case cited by the counsel for the defendant in regard to the consideration, that I could not decide this case upon that authority. I do not think that the case cited from Wheatley's notes is law. I believe that the consideration in this case, if it had been a legal consideration, would have been ample; that an agreement not to sell under a certain price by different parties, is or may be a detriment or an advantage to either one or the other. It is a promise for a promise, and I think, under all the rules governing considerations, it would be a good consideration, were there no others. The demurrer will be sustained.